# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| *Plaintiff,* § | |
| v. § | Case No. 4:02-CR-100(15) |
| § | Judge Mazzant |
| FRANCISCO CABRERA GARZA, § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release styled as Defendants [sic] Motion to Reduce Sentence Pursuant to Newly Amended 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1025). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

For the purposes of this Motion, the Court adopts the relevant facts underlying this case as set forth in Defendant's previous Motion for Compassionate Release (Dkt. #1013).

On August 27, 2024, Defendant filed this Motion based on "extraordinary and compelling reasons," including: (1) an unusually long sentence; (2) a "substantial rehabilitation" record; (3) his time served so far; (4) the COVID pandemic; (5) "continuous lockdowns over short staffing"; and (6) "prison conditions," including "failing infrastructure, [and] failure to provide adequate and reasonable RRC Placement that coincide with all earned FTC credits that violate FSA Law for Timely Eligibility (Bed Space)" (Dkt. #1025 at pp. 4–5).[1] In addition, Defendant asks

---

[1] The Court will refer to the "failure to provide adequate and reasonable RRC Placement that coincide with all earned FTC credits that violate FSA Law for Timely Eligibility (Bed Space)" portion of the fifth asserted basis for compassionate release as "RRC placement issue" for the remainder of this Order.

this Court to consider factors such as his age, clean disciplinary history, low likelihood of recidivism, and referral for RRC placement when making its decision (Dkt. #1025 at pp. 4–5). Ultimately, Defendant petitions the Court to reduce his sentence to time served to be followed by five years of supervised release (Dkt. #1025 at p. 7). At this time, Defendant has served about 265 of the 360 months of his sentence. The Government has not responded to this Motion.

## LEGAL STANDARD

I.     **18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i)    extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of

> > the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[2]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923,

---

[2] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

3

at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.   Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[3] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833

---

[3] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 U.S. App. LEXIS 234, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

**III.    U.S.S.G.'s Policy Statement**

    **A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))**

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D). *First*, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-

5

50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

*Second*, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

*Third*, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775,

6

at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

*Fourth*, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[4] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing

---

[4] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to be an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

7

COVID-19 suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Tamayo*, No. 3:05-CR-00313-M-1, 2022 WL 1096580, at *5 (N.D. Tex. Mar. 14, 2022) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)); *see also Koons,* 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[5] the United States Centers for Disease Control and Prevention,[6] and the U.S. Federal Government,[7] have made clear that the COVID-19 pandemic has ended.[8] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

---

[5] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[6] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[7] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[8] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination.") (quotations omitted).

### B. Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, the defendant must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)  The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)  The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)  The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was

9

disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Villegas*, No. 4:13-CR-200-SDJ, 2025 WL 350229, at *5 (E.D. Tex. Jan. 30, 2025) (quoting *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023)) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D. Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E. Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances . . . similar in gravity" to the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the

11

Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.   The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors

12

can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[9] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

### I.    Defendant has met § 3582(c)(1)(A)'s exhaustion requirement.

As a threshold matter, the Court first addresses the exhaustion requirement. Defendant claims that, among other things, extensive rehabilitation, changes in the statutory maximum for his conviction, and various housing deficiencies constitute "extraordinary and compelling" reasons justifying his release (Dkt. #1025 at pp. 3–5). However, Defendant provides no evidence that he exhausted his administrative remedies before filing this Motion. For instance, Defendant did not show that he sent a request to his facility's warden to move for compassionate release on his behalf,

---

[9] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

and that either thirty days had elapsed since such request was sent or the request was denied. *See Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). The only correspondence Defendant sent to the BOP was a request for clarification and application of his earned and projected earned credits following the United States Supreme Court's ruling in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (Dkt. #1025 at pp. 16–17). Although Defendant has not provided any evidence that he exhausted his administrative remedies, the requirement can be waived. *McLean*, 2022 WL 44618, at *1. Here, the Government has not responded to the Defendant's Motion; any argument that he has not exhausted his administrative remedies, then, is deemed waived. *Id.* at *2. Thus, the Court presumes that Defendant exhausted his administrative remedies.

II. **Defendant has not met § 3582(c)(1)(A)'s requirement that "extraordinary and compelling reasons" warrant a sentence reduction.**

Turning to Defendant's Motion, his request for compassionate release falls mainly under U.S.S.G. §§ 1B1.13(b)(2), (5), and (6). Even if Defendant did in fact exhaust his administrative remedies, Defendant's assertion fails because his conditions are insufficiently severe to constitute "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i). Defendant's claim for compassionate release turns on, among other things, a more developed record of rehabilitation, an assertion that he was given an unusually long sentence relative to a new statutory maximum for his offense, "COVID, continuous lockdowns over short staffing," and "prison conditions" (i.e., failing infrastructure and an RRC placement issue) (Dkt. #1025 at pp. 3–5). In addition, Defendant asks the Court to consider factors such as his "[fifty] years of age, . . . clear conduct, low recidivism, and [his] referral for RRC placement in August 2025" when making its decision (Dkt. #1025 at pp. 4–5). When combined, Defendant asserts that

14

these factors constitute "extraordinary and compelling" reasons to justify his sentence reduction (Dkt. #1025 at pp. 4–5).

Defendant's rehabilitation record supports his release. Although rehabilitation alone cannot support a claim for sentence reduction, it may be considered "in conjunction with other factors" in evaluating whether "extraordinary and compelling reasons" exist. *See Jean*, 108 F.4th at 279 (stating that "Congress did not prohibit district courts from considering rehabilitation in conjunction with other factors"). Here, Defendant's rehabilitation record features even more accomplishments than the record the Court previously described as impressive, namely because of his completion of Phase I in the Challenge Program, his completion of various journals in that same program, his completion of a poetry course, his recognition as the most involved in various projects, and the support he will receive from his family and friends if he were released (Dkt. #1025 at pp. 8–15). Further, Defendant's referral concerning RRC placement is set to be processed in August 2025, and no other incidents of misconduct has been brought to the Court's attention (Dkt. #1025 at p. 16). Lastly, while Defendant played an integral role in the narcotics conspiracy for which he was charged, he has served a more significant portion of his sentence. Accordingly, Defendant's rehabilitation record supports his release.

The remaining factors that Defendant offers for consideration do not constitute "extraordinary and compelling" reasons supporting his release. *First*, while Defendant has served a significant portion of his imposed sentence, this alone, or in conjunction with the remaining factors, does not constitute an "extraordinary and compelling" reason to justify his release.

*Second*, Defendant is fifty years old as opposed to sixty-five, the minimum age at which this factor can be considered. U.S.S.G. § 1B1.13(b)(2). Additionally, Defendant did not show that he is

15

"experiencing serious deterioration in physical or mental health because of the aging process." *Id.* Accordingly, Defendant's age does not support his release.

*Third*, Defendant's assertion that he was given an unusually long sentence does not support his release. Defendant asserts that he would receive a lesser sentence today—twenty years—if he were convicted for the same crime with which he was originally charged (Dkt. #1025 at p. 3). Additionally, Defendant asserts that he has served a significant portion of his sentence. (Dkt. #1025 at p. 4). However, Defendant cited no authority indicating a change in the statutory maximum for a 21 U.S.C. § 846 violation based on 21 U.S.C. § 841. In fact, at the time of this order, there is not a change in these statutes reflecting Defendant's asserted change. *Compare* 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) *with* 21 U.S.C. § 846 (2004) and 21 U.S.C. § 841(a)(1) (2004). Even if it did reflect the change, Defendant did not claim that it would present "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," despite his completion of the minimum ten years of his sentence. U.S.S.G. § 1B1.13(b)(6). Additionally, Defendant would have needed to show that such change was made retroactive, which he did not do. *Austin*, 2025 WL 78706, at *3. Thus, the Court finds that Defendant's assertion of an unusually long sentence does not constitute an "extraordinary and compelling" reason supporting release.

*Fourth*, Defendant requests for the Court to consider the COVID-19 pandemic when making its "extraordinary and compelling" inquiry (Dkt. #1025 at p. 5). However, the Fifth Circuit has been reluctant to grant compassionate release based on COVID-19 concerns. *United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 movant suffered from heart failure). Indeed, since the pandemic has ended, it is difficult to see how the COVID-19 pandemic could now be the basis for compassionate release. *See United*

*States v. Gonzalez*, No. 4:19-CR-160-SDJ, 2025 WL 254112, at *4 (E.D. Tex. Jan. 21, 2025). Accordingly, the Court finds that the COVID-19 pandemic does not constitute an "extraordinary and compelling" reason supporting Defendant's release.

*Finally*, Defendant requests for the Court to consider prison conditions, namely failing infrastructure and an issue with RRC placement, in its "extraordinary and compelling" inquiry, but these conditions are not sufficient to justify his release. Defendant does not explain how his prison conditions are insufficient or unreasonable despite mentioning them at the end of his Motion (Dkt. #1025 at p. 5). Regarding the RRC placement issue, the wording of Defendant's assertion is ambiguous in that it is unclear whether a denial of RRC placement with proper bed spacing has occurred, or if RRC placement has been delayed or refused because there is a lack of bed space (*See* Dkt. #1025 at p. 5). If it is the former, Defendant does not indicate in his Motion that he attempted to remedy this situation by reaching out to the Bureau of Prisons, and—even if he did— it would not be sufficient to constitute an "extraordinary and compelling" reasoning justifying Defendant's release.

However, if it is the latter, then such a decision is not reviewable by a court. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability . . . place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence . . . [n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *see also Simpson v. Bayliss*, No 5:24-CV-154, 2024 U.S. Dist. LEXIS 189100, at *12 (finding that "[§] 3632 does not impose on the BOP a specific and discrete duty amendable by this Court" and rulings to the

17

contrary have been superseded by 18 U.S.C. § 3621(b)); *In re Newton,* 2025 U.S. App. LEXIS 621, at *3–4 (5th Cir. Jan. 10, 2025) (per curiam) (finding in a mandamus action that a BOP's placement decision is not reviewable by the court). Indeed, even for courts finding that the BOP has a mandatory duty to place defendants in RRC placement recognize that § 3624, on its face, does not require immediate placement. *See Bayliss*, 2024 U.S. Dist. LEXIS 189100, at *8 (acknowledging that § 3624 requires, "to the extent practicable, that the prisoner spends 'a portion' of his final [twelve] months under conditions that will prepare the prisoner for reentry into the community"). Even if there were such a violation, the Court does not agree that this is a "reason[] similar in gravity to those previously described." U.S.S.G. § 1B1.13(b)(5). Accordingly, the Court finds that the prison conditions and the issue with RRC placement do not constitute "extraordinary and compelling" reasons supporting Defendant's release.

Weighing the evidence and factors together, Defendant's more developed rehabilitative efforts and improvements are laudable, but that does not prove that his incarceration is "extraordinary and compelling" under the § 3582 (c)(1)(A)(i) framework based on the remaining factors. *See United States v. Ennis*, No. EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) (stating that the defendant "has the burden to show circumstances meeting the test for compassionate release"). Therefore, since "rehabilitation alone is insufficient to grant a defendant's motion for compassionate release," Defendant's Motion must be denied. *Jean*, 108 F.4th at 279.

### III. The 18 U.S.C. § 3553(a) factors do not support Defendant's Motion for Compassionate Release.

Even if "extraordinary and compelling" reasons existed, the sentencing factors under 18 U.S.C. § 3553(a) support denying Defendant's Motion. Defendant, along with numerous other

defendants, was convicted of conspiracy to distribute or dispense MDMA, methamphetamine, cocaine, and gamma hydroxybutyrate (Dkt. #781 at pp. 1–2). Defendant was then sentenced to thirty years in prison (Dkt. #781 at pp. 1–2). For his part, the jury found that he supplied "500 grams or more of methamphetamine, 500 grams or more of cocaine, and an unspecified amount of ecstasy," and that there was evidence that he threatened to kill a state's witness (Dkt. #1010 at pp. 1, 20). He also has two prior convictions for Aggravated Assault with a Deadly Weapon (Dkt. #1010 at pp. 20–21). The Court is persuaded by the Government's prior recommendation not to release the Defendant from custody despite his rehabilitation and time served (Dkt. #1010 at p. 21).

After weighing the sentencing factors, the Court finds that granting Defendant's release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for his offense, nor adequately deter criminal conduct or protect the public. *Chambliss*, 948 F.3d at 693.

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Here, Defendant did not meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i). Thus, even when accounting for the § 3553 sentencing factors, the Court must deny the Motion.

## CONCLUSION

It is therefore **ORDERED** that Motion for Compassionate Release styled as Defendants [sic] Motion to Reduce Sentence Pursuant to Newly Amended 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1025) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 31st day of March, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE